| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STACY MCGUIRE, an individual, and as Successor in Interest to Benjamin McGuire Jr.; BENJAMIN MCGUIRE SR. an individual, and as Successor in Interest to Benjamin McGuire, Jr., | | No. 2:23-cv-2958 DC AC |
| Plaintiff, | | FINDINGS AND RECOMMENDATIONS |
| v. | | |
| STANISLAUS COUNTY; SHERIFF VERNON WARNKE, Individually and in his capacity as Sheriff for Merced County, MERCED COUNTY, MERCED COUNTY SHERIFF, STANISLAUS COUNTY SHERIFF and DOES ONE through TWENTY-FIVE, inclusive, | | |
| Defendants. | | |

Before the undersigned are two motions to dismiss, ECF Nos. 60 (filed by the Stanislaus County defendants) and 61 (filed by the Merced County defendants), which were referred to the undersigned for Findings and Recommendations by U.S. District Judge Dena M. Coggins. ECF No. 76. For the reasons set forth below, the undersigned recommends defendants' motions to dismiss be GRANTED and that this case be dismissed and closed.

////

////

1

# I. Background

## A. The Operative Second Amended Complaint

Plaintiffs Stacy McGuire and Benjamin McGuire Sr. bring this lawsuit on behalf of themselves and as successor in interest to their son, Benjamin McGuire Jr. ("Decedent"). ECF No. 56 at 1, 6. The initial complaint was filed on December 18, 2023. ECF No. 1. The complaint was dismissed with leave to amend on July 11, 2024. ECF No. 43. The first amendment complaint was filed on August 1, 2024 (ECF No. 44), and the parties stipulated to allow plaintiffs to amend again. ECF No. 52. The Second Amended Complaint, now before the court, was filed on November 8, 2024 (ECF No. 56) and alleges as follows.

On or about October 17, 2022, Stacy McGuire was hosting a birthday party for her daughter at her home. ECF No. 56 at 6. During the party, Stacy McGuire and Decedent were talking in the front yard. Id. Damon Banks drove by the home slowly and pointed to Decedent, calling him a "dead man walking." Id. Decedent, in the presence of Stacy McGuire, called his probation officer and asked for assistance or permission to carry a gun while at home because he feared for his life. Id. The request was denied, but the probation officers stated they would inform the Sheriff to arrange for assistance. Id. The probation officer failed to make any report or request an investigation by law enforcement. Stacy McGuire and Decedent called the Sheriff's Department together after the interaction to report the threat of violence made against him. Id.

On November 1, 2022, Decedent's grandfather saw Banks parked outside of Decedent's home and reported the incident to emergency services. The Stanislaus County Sheriff came to the grandfather's home, and Decedent showed the Stanislaus County deputies a threatening text message he had received. Id. The deputies refused to take any action. Id. at 7. In early November 2022, Stacey McGuire received several "unhinged messages" from Banks in which he told her he wished he was dead. Id. On November 4, 2022, she received a text from Banks stating "I'm out getting drunk! Hope you can live without me. Every day I pray to die. I can't live without you so it's a matter of time. You know this so you know what is coming. When I can't do this anymore I hope you don't have second thoughts! It will be to late." Id.

Around the same time, Damon Banks parked in front of Stacy McGuire's gate, jumped the

fence, and walked into her home while she was inside. Id. Ms. McGuire snuck into the garage to hide, ultimately getting into her car and driving away. Id. In the rear-view mirror she saw Banks in her driveway holding a firearm. Id. She called 911 but was only asked whether Banks was shooting and whether she had a safe place to go. Id. Later that night, Ms. McGuire was informed by her neighbor that Banks had returned and entered the neighbor's property. Id. During this time period, Benjamin McGuire, Sr. observed Banks stalking his and Stacy McGuire's children. He called 911 multiple times for assistance to no avail. Id.

On November 4, 2022, Stacy McGuire received a phone call from her neighbors that someone was shooting at her home and vehicle. The neighbors had called 911 and were informed by dispatch that they would "look into it." Id. at 8. Stacy McGuire called 911 again that night, advising dispatch that her home was being shot at, and that she was out of town and concerned for the wellbeing of her children. Id. Stanislaus County Sherriff's department did not take action. On November 5, 2022 at 12:04 a.m., Ms. McGuire received a final text from Banks stating "Can't wait to end this …" shortly before Banks broke into McGuire's son's home and murdered him. Id. On May 5, 2023, plaintiffs presented written claims for damages to Merced County and Stanislaus County. Id. Stanislaus County issued a notice rejecting the claim on June 20, 2023; Merced County issued a notice rejecting the claim on July 6, 2023. Id.

Plaintiffs assert several causes of action: (1) violation of Decedent's rights under 42 U.S.C. §1983; (2) violation of plaintiffs' rights under 42 U.S.C.§ 1983; (3) municipal liability under 42 U.S.C.§ 1983; (4) violation of California Penal Code § 836(c)(1); (5) failure to serve a restraining order; (6) failure to enforce a restraining order; and (7) breach of special relationship duty. Id. at 8-23.[1]

### B. Motions to Dismiss

Defendants move to dismiss the Second Amended Complaint on several grounds including: (1) plaintiffs do not have standing to bring any survivor action in the absence of the

---

[1] The enumerated list of claims on the complaint's face page, ECF No. 56 at 1, differs from the numbering of the causes of action in the body of the complaint. The court refers to the claims as they are numbered in the body of the complaint, id. at 8-23.

3

appropriate declarations under California Code Civ. Proc., § 377.32; (2) the first, second and third claims for relief under 42 U.S.C § 1983 fail to state a claim for relief; (3) the failure to train and supervise claim (third claim) should be dismissed for failure to state a claim under Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978); (4) the County and its Sheriff's Department are immune from direct liability for any state law claims under California Government Code section 815; (5) the fourth claim for violation of California Penal Code fails to state a claim.; and (6) the "special relationship" claims asserted in in the fifth, sixth, and seventh claims fail to state a claim.  ECF No. 60 at 1-2, ECF No. 61-1.

Plaintiffs filed untimely opposition briefs, ECF Nos. 67 and 68, which the District Judge decided should be considered despite their untimeliness in the interest of reaching the merits of the case.  ECF No. 73 at 5.  Defendants replied.  ECF Nos. 74, 75.  In response to the motions to dismiss, plaintiffs filed the declarations required by California Code Civ. Proc. § 377.32 establishing their status as successors in interest to the Decedent, and the issue of their standing to bring a lawsuit on behalf of Decedent is now moot.  See ECF Nos. 65, 66, 74 at 1.  In making a recommendation on the motions to dismiss, the undersigned has fully considered all of the briefing before the court.

## II. Analysis

### A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

1   action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35
2   (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to
3   'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
4   (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads
5   factual content that allows the court to draw the reasonable inference that the defendant is liable
6   for the misconduct alleged." Id.

7   In reviewing a complaint under this standard, the court "must accept as true all of the
8   factual allegations contained in the complaint," construe those allegations in the light most
9   favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus,
10  551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,
11  960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th
12  Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of
13  factual allegations, or allegations that contradict matters properly subject to judicial notice. See
14  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State
15  Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t

16      B.  Section 1983 Claim(s) for Violation of Due Process (Claims 1, 2, 3)

17  Although the Second Amended Complaint is unclear as to which specific constitutional
18  rights are alleged to have been violated, plaintiffs specify in their opposition briefs that their first
19  three claims are premised on the theory that defendants' refusal to serve a valid restraining order
20  violated due process. ECF Nos. 56 at 8-14, 67 at 3. Neither the SAC nor the briefing of the
21  motions to dismiss make any distinction between substantive and procedural due process.
22  Although the parties use phrases and cite authorities involving both types of due process claims
23  without distinguishing between them, the court will separately address these issues.

24      1.  Procedural Due Process

25  To the extent plaintiffs contend that California law required defendants to serve the
26  subject restraining orders, respond to their 911 calls, and protect Decedent from harm by Damon
27  Banks, thus creating an interest protected by the Due Process Clause of the U.S. Constitution,
28

their claims are based in procedural due process.[2] See Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 755-56 (2005). The existence of a liberty or property interest protected by the Fourteenth Amendment is an essential element of a due process claim. See Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Accordingly, these claims may proceed only if plaintiffs have a constitutionally protected interest in the service of a restraining order.

The Due Process Clause does not protect all government benefits, or even those which a citizen may reasonably expect to receive, but only those which are entitlements as a matter of state law or other authority. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); Paul v. Davis, 424 U.S. 693, 709 (1976). A benefit is not a protected entitlement if government officials may grant or deny it in their discretion. See, e.g., Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462-463 (1989). Accordingly, the existence of prosecutorial or law enforcement discretion will defeat the assertion of a protected interest. Castle Rock, 545 U.S. at 760-61, 764.

In Castle Rock, the plaintiff filed a § 1983 suit against a municipality and individual police officers for violation of the Fourteenth Amendment's Due Process Clause alleging that the officers, acting pursuant to official policy or custom, failed to respond to her repeated reports over several hours that her estranged husband had taken their three children in violation of her restraining order against him. The husband ultimately murdered the children. Id. at 748. The Supreme Court considered the question "whether an individual who has obtained a state-law restraining order has a constitutionally protected property interest in having the police enforce the restraining order when they have probable cause to believe it has been violated." Id. at 750-751. The Court held that, despite the mandatory-sounding language of the applicable Colorado statute, "respondent did not, for purposes of the Due Process Clause, have a property interest in enforcement of the restraining order against her husband." Id. at 768. District courts have

---

[2] See, e.g., ECF No. 56 (SAC) at 9, 11 (alleging infringement of interests protected by the Fourteenth Amendment), 15-16 (alleging defendants failed to comply with California statute establishing mandatory duty to respond and arrest violators of restraining orders).

1 uniformly found that Castle Rock requires the same result under California law, which also grants
2 discretion in the enforcement of restraining orders.  See, e.g., Stone v. City of Los Angeles, 2022
3 U.S. Dist. LEXIS 131993 at *16-18, 2022 WL 2916075 (C.D. Cal. July 25, 2022); Pantoja v. Los
4 Angeles County, 2019 U.S. Dist. LEXIS 154361 at *23-25, 2019 WL 4280063 (C.D. Cal. Aug.
5 13, 2019); see also Verdun v. City of Santa Paula, 2024 U.S. Dist. LEXIS 211351 at *25-26,
6 2024 WL 4839797 (C.D. Cal. Nov. 18, 2024).

7     In response to a previous motion to dismiss, plaintiffs acknowledged in light of Castle
8 Rock that the failure to *enforce* a restraining order might not support a claim—but insisted
9 without citation to authority that the failure to *serve* could still do so.  See ECF No. 38 at 3.  The
10 previously assigned district judge dismissed the original complaint with leave to amend, in part so
11 that plaintiffs could attempt to better support such a theory.  ECF No. 43 at 4-5.  Neither the SAC
12 nor plaintiffs' response to the present motions, however, cites any authority recognizing a
13 constitutionally protected right to the service of restraining orders under California (or any other)
14 law.  To the contrary, the authorities cited by plaintiffs address an entirely different issue: the
15 failure to protect persons in state custody.  ECF No. 67 at 3 (citing Clouthier v. County of Contra
16 Costa, 591 F.3d 1232, 1242-43 (9th Cir. 2010) and Farmer v. Brennan, 511 U.S. 825, 847
17 (1994)).  Those authorities are inapposite, as states have unique constitutional obligations,
18 independent of state law, to protect those persons they have involuntarily detained and whose
19 conditions of confinement they control.  Such affirmative obligations do not extend to free
20 persons.  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200
21 (1989).  In any event, the doctrinal issues raised by these citations involve substantive due
22 process, which is discussed below.  Plaintiffs have identified no authority relevant to the
23 procedural due process issue, which is whether California's statutory and regulatory scheme for
24 the service of restraining orders gives rise to a protected property interest.

25     As they did on the prior motions to dismiss, plaintiffs attempt to distinguish Castle Rock
26 on grounds that its holding is limited by its terms to the "enforcement" of restraining orders and
27 that the Supreme Court did not address the "service" of such orders.  ECF No. 68 at 4.  However,
28 there is no principled basis for finding that the "service" of such orders is distinct from

"enforcement" in a way that matters to the due process analysis. Indeed, "enforcement" is a relatively broad term that fairly encompasses service issues, responses to 911 calls from protected persons, and arrests for violations of restraining orders. Other courts have quite sensibly found that Castle Rock precludes claims based on the alleged failure to properly execute any of those or analogous duties. See Stone, 2022 U.S. Dist. LEXIS 131993 at *17-18 (claim fails under Castle Rock "irrespective of whether [plaintiff] alleges that he had a due process right to have the service of his restraining orders accepted as valid, or whether he alleges he had a due process right to have [the persons subject to restraining orders] arrested for violating the restraining orders."); Pantoja, 2019 U.S. Dist. LEXIS 154361 at *27 (Castle Rock bars claim for failing to arrest plaintiff's ex-husband for violating restraining order); see also Malott v. Placer County, No. 2:14-CV-1040 KJM EFB, 2014 U.S. Dist. LEXIS 161070 at *3-32, 2014 WL 6469125 (E.D. Cal. Nov. 17, 2014) (applying Castle Rock and concluding that California law does not create a protected interest in the service of subpoenas).

The undersigned agrees that Castle Rock necessarily extends to all matters coming within the scope of law enforcement response to restraining orders, including their service. Because there is no constitutionally protected interest in police enforcement of a restraining order, there can be no §1983 claim for violation of the Due Process clause when law enforcement fails to serve or enforce such an order. That is the case even when, as here and as in Castle Rock, that failure leads to undeniably tragic consequences.

### 2. Substantive Due Process

To the extent plaintiffs contend that the Due Process Clause itself gives rise to the protections they were denied, they are asserting a substantive due process claim.[3] The substantive due process doctrine "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting Rochin v. California, 342 U.S. 165, 172 (1952)). In the substantive due process context, the

---

[3] See, e.g., ECF No. 56 at 10, 14 (alleging government conduct that "shocks the conscience").

8

1  Supreme Court has squarely held that "a State's failure to protect an individual against private
2  violence simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S.
3  at 197. This is because the purpose of the Due Process Clause is "to protect the people from the
4  State, not to ensure that the State protect[s] them from each other." Id. at 196.

5  As noted above, plaintiffs rely on cases recognizing the potential liability of custodial
6  officers for failing to protect incarcerated persons from third party violence. These authorities are
7  inapposite, as states have unique constitutional obligations to protect those whom they have
8  involuntarily detained and whose conditions of confinement they control. DeShaney, 489 U.S. at
9  199-200. This duty to protect flows from the "special relationship" the state creates when it takes
10 a person into its custody and holds him there against his will. Id.[4] Plaintiffs' filings contain
11 references that suggest they mean to assert the special relationship exception to the DeShaney
12 rule.

13 The special relationship exception does not apply, however, when a state fails to protect a
14 person who is not in custody. Patel v. Kent School Dist., 648 F.3d 965, 972 (9th Cir. 2011). A
15 state's "knowledge of [a plaintiff's] plight and its expressions of intent to help — absent some
16 type of state-imposed limitation on that plaintiff's freedom — is not enough to give rise to the
17 [special relationship] exception." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 700 (9th Cir.
18 1990) (quoting DeShaney, 489 U.S. at 198–199). In Balistreri, the Ninth Circuit found that the
19 special relationship doctrine did not apply where police refused to arrest plaintiff's husband
20 despite a restraining order and overwhelming evidence of his ongoing abuse and harassment. Id.
21 If no special relationship existed in Balistreri, it cannot have existed on the facts of this case. The
22 horrible consequences of law enforcement failure to protect cannot create liability where there
23 was no special relationship giving rise to a constitutional duty to protect in the first place. See
24 Johnson v. City of Seattle, 474 F.3d 634, 639 (9th Cir. 2007) ("Because the City of Seattle had no
25 constitutional duty to protect the Pioneer Square Plaintiffs against violence from members of the
26 riotous crowd, 'its failure to do so—though calamitous in hindsight—simply does not constitute a

---

[4] When a person is incarcerated for the purpose of serving a criminal sentence, the Eighth
Amendment also provides a source of constitutional protection.

violation of the Due Process Clause.'") (quoting DeShaney, 489 U.S. at 202).

The only other exception to DeShaney arises where "state action creates or exposes an individual to a danger which he or she would not have otherwise faced." See Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 (9th Cir. 2006); see also Munger v. City of Glasgow Police, 227 F.3d 1082, 1086 (9th Cir. 2000) (plaintiff must establish that "officers left [him or her] in a situation that was more dangerous than the one in which they found him."). This doctrine does not help plaintiffs here,[5] because no affirmative act of any defendant created the danger posed by Damon Banks. See Hernandez v. City of San Jose, 897 F.3d 1125, 1135 (9th Cir. 2018) (exception requires affirmative acts by defendants rather than omissions). Here the SAC repeatedly alleges omissions rather than affirmative acts.[6] Indeed, plaintiffs contend in sum that due process was violated by defendants' "failure to take any act whatsoever" in response to plaintiffs' reports of Banks' threats. ECF No. 56 at 9.

Defendants' alleged failures to act did not leave plaintiffs in a situation more dangerous than they faced at the time of their pleas for help. See Pantoja, 2019 U.S. Dist. LEXIS 154361 at *17 (exception did not apply because failure to arrest plaintiff's ex-husband for violating restraining order did not make the danger greater than it already was). In Motley v. Smith, No. No. 1:15-cv-00905 DAD, the court found that a police department was not liable under the "danger creation" exception where it failed to attempt to find and arrest a victim's abusive boyfriend despite an officer's promise that the department would do so, because "[a] state actor cannot be held liable for failing to mitigate an already existing dangerous situation [that was] not instigated by state action." Motley, 2016 U.S. Dist. LEXIS 80039 at *16, 2016 WL 3407658

---

[5] Plaintiffs appear to invoke the doctrine by alleging and arguing that defendants demonstrated deliberate indifference to their safety. ECF No. 56 at 9; ECF No. 67 at 3. The state-created danger exception applies when (1) affirmative conduct by the state places the plaintiff in danger, and (2) the state acts with "deliberate indifference" to a "known and obvious danger." Patel, 648 F.3d at 974. Because plaintiff cannot satisfy the first prong of this test for the reasons explained above, there is no need to consider deliberate indifference.

[6] See, e.g., ECF No. 56 at 6 (decedent called his probation order and probation officer failed to make any report or request an investigation), 6-7 (decedent showed Stanislaus County deputies threatening text messages from Banks and the deputies refused to act on it); 7 (Ms. McGuire called 911 when Banks appeared at her home with a firearm and dispatch only asked whether she had a safe place to go); 7 (Mr. McGuire "called 911 for assistance to no avail.").

(E.D. Cal. June 20, 2016).  As in Panjota and Motley, the danger in this case was created by a private actor outside the defendants' control and therefore cannot be fairly attributed to the state.

### 3. Plaintiffs Have Not Stated a Viable Due Process Claim

For the reasons stated above, plaintiffs' putative due process claim(s) cannot support relief.  DeShaney forecloses liability on a substantive due process theory, and Castle Rock forecloses liability on a procedural due process theory.  Accordingly, plaintiffs' § 1983 claims fail to allege any violation of due process as a matter of law.

### C. Section 1983 Claim(s) for Violation of the First Amendment (Claims 1, 2, 3)

The first, second, and third causes of action in the Second Amended Complaint also reference the First Amendment.  ECF No. 56 at 8-12.  Plaintiffs contend that that the failure to serve the restraining order denied them their "right to petition the government for redress of grievances in violation [of their] First Amendment protections."  Id. at 10.

Well-established law unambiguously forecloses this cause of action.  As other judges of this court have explained, "the First Amendment does not impose any affirmative obligation on the government to respond to the petitions raised by individual citizens, does not guarantee that citizens' speech will be heard, and does not require that every petition for redress of grievances be successful."  Hamer v. El Dorado County, No. 2:08-cv-2269-MCE-EFB-PS, 2010 WL 670780, at *6 (E.D. Cal. Feb. 19, 2010), report and recommendation adopted, No. 2:08-cv-02269-MCE-EFB-PS, 2010 WL 1236409 (E.D. Cal. Mar. 19, 2010) (citing Smith v. Ark. State Highway Employees, Local 1315, 441 U.S. 463, 464–65 (1979) ("The First Amendment right to associate and to advocate 'provides no guarantee that a speech will persuade or that advocacy will be effective.' ... The public employee surely can associate and speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so.... But the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize the association and bargain with it."); DeGrassi v. City of Glendora, 207 F.3d 636, 647 (9th Cir. 2000) ("the First Amendment does not guarantee that citizens' speech will be heard")).  Because there is no First Amendment guarantee that the government will act on citizen complaints or requests for assistance, plaintiffs fail to state a claim on this theory and these

11

causes of action must be dismissed.

        D.  <u>Section 1983 Claim for Failure to Train and Supervise (Claim 3)</u>

Plaintiffs' third §1983 claim expressly alleges municipal liability. ECF No. 56 at 12. It alleges that "dozens of 911 calls were made and there was no response" and that it is a "fair inference of the total failure to respond that there is a conscious or deliberate indifference and choice" to ignore 911 calls that constitutes a "pattern of similar constitutional violations by untrained employees." ECF No. 67 at 4. A municipality or other local government entity may be sued for constitutional torts committed by its officials according to an official policy, practice, or custom. <u>Cortez v. County of Los Angeles</u>, 294 F.3d 1186, 1188 (9th Cir. 2002) (citing <u>Monell v. N.Y. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690–91 (1978)). The Ninth Circuit recognizes four theories for establishing municipal liability: "(1) an official policy; (2) a pervasive custom or practice; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." <u>Horton by Horton v. City of Santa Maria</u>, 915 F.3d 592, 602–03 (9th Cir. 2019). Plaintiffs appear to rely primarily on a failure to train theory. ECF No. 67 at 4.

A municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1186 (9th Cir. 2006). In order to state a claim that can survive a motion to dismiss, "a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." <u>Benavidez v. County of San Diego</u>, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

Under this or any theory of municipal liability, the existence of an underlying constitutional violation is a necessary element of a claim. A municipality's deliberately indifferent failure to train is what makes it potentially liable for a constitutional violation committed by those it failed to train, but municipal inaction does not constitute a free-standing constitutional violation or support an independent cause of action. As set forth above, plaintiffs

12

have not established that the failure to respond to their 911 calls or to serve a restraining order amounts to any cognizable violation of their constitutional rights. Accordingly, plaintiffs cannot meet the first element of a failure to train claim, and this cause of action must be dismissed.[7]

### E. Violation of Penal Code § 836(c)(1) (Claim 4)

In Claim Four, plaintiffs allege that defendants violated California Penal Code § 836(c)(1), which provides:

> When a peace officer is responding to a call alleging a violation of a domestic violence protective or restraining order ... and the peace officer has probable cause to believe that the person against whom the order is issued has notice of the order and has committed an act in violation of the order, the officer shall ... make a lawful arrest of the person without a warrant and take that person into custody whether or not the violation occurred in the presence of the arresting officer.

As a general matter, violations of criminal statutes do not create private causes of action. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). The SAC identifies no legal basis for this claim, and plaintiffs concede in response to the motions to dismiss that their allegations fail to state a claim on which relief may be granted. ECF No. 67 at 5. Accordingly, this claim must be dismissed.[8]

### F. Common Law Negligence (Claims 5, 6, 7)

Plaintiffs' fifth, sixth, and seventh claims each assert that defendants violated the law by failing to act on the known threat posed to plaintiffs and their deceased son by Damon Banks. Claim Five rests on the failure to serve the restraining order, Claim Six on the failure to enforce it, and Claim Seven alleges the breach of a special relationship. ECF No. 56 at 17-22. Although

---

[7] The same defect prevents plaintiffs from proceeding on the alternative theory that defendants' failure to respond adequately to their 911 calls was part of a municipal custom or practice of ignoring 911 calls. See ECF No. 67 at 4. The court notes that plaintiffs' allegations of a custom or practice are completely conclusory and appear to be speculative. Further amendment to add facts related to the existence of a custom or practice would be futile, as the circumstances of Decedent's death do not establish any constitutional violation as a matter of law.

[8] To the extent that plaintiffs rely on Cal. Penal Code § 836(c)(1) for their due process theory, the language of the statute does not create a constitutionally protected interest in the enforcement of restraining orders for the reasons explained above. See Stone, 2022 U.S. Dist. LEXIS 131993 at *16-18 (finding that Cal. Penal Code § 836(c)(1) does not create constitutionally protected interest); Pantoja, 2019 U.S. Dist. LEXIS 154361 at *23-25 (same).

these are not designated as negligence claims in the SAC,[9] plaintiffs' briefing references concepts of duty and breach and cites California negligence cases. ECF No. 67 at 5-7; ECF No. 68 at 6-8. Plaintiffs contend specifically that when "Defendants accepted the restraining orders for service, Defendants voluntarily undertook a protective duty toward a specific member of the public which induces detrimental reliance by that individual, thereby creating a 'special relationship.'" ECF No. 68 at 6. It accordingly appears that these causes of action are based on a common law special relationship theory offered in support of negligence liability.

The elements of a negligence cause of action under California law are: "(1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Megargee v. Wittman, 550 F. Supp. 2d 1190, 1209 (E.D. Cal. 2008) (citations omitted). Here, the claims fail for lack of a duty of care. "In the absence of a special relationship, a person who has not created a peril has no duty to come to the aid of another." Greyhound Lines, Inc. v. Dep't of California Highway Patrol, 213 Cal. App. 4th 1129, 1136 (2013). However, if a person comes to the aid of another voluntarily, he or she assumes a duty to exercise due care. Id. "Such a volunteer is liable if (1) his or her failure to exercise due care increases the risk of harm, or (2) the harm is suffered because of the other's reliance upon the undertaking." Id. This rule applies to law enforcement. Id. "Nonfeasance that leaves the citizen in exactly the same position that he or she already occupied cannot support a finding of duty of care." Id.

These principles generally bar recovery when individuals are harmed by a third person engaged in criminal activities and claim that their injuries could have been prevented by the timely assistance of law enforcement, even when law enforcement was aware of the risk. See Zelig v. County of Los Angeles, 27 Cal. 4th 1112, 1129 (2002). Liability may be imposed if an officer voluntarily assumes a duty to provide a particular level of protection and then fails to do so, Williams v. State of California, 34 Cal. 3d 18, 23-24 & n.3 (1983), or if an officer undertakes affirmative acts that increase the risk of harm to the plaintiff, Benavidez v. San Jose Police Dept.,

---

[9] Claim Seven does conclude with an express allegation of negligence. ECF No. 56 at 22. Claims Six and Seven do not include any reference to a legal basis for relief on the facts alleged.

14

71 Cal. App. 4th 853, 863 (1999).  Neither is the case here.

As discussed above in relationship to the putative due process claims, plaintiffs allege that defendants *failed* to act by not properly serving and enforcing a restraining order.  ECF No. 56 at 9 (alleging "failure to take any act whatsoever"); see also supra n.6.  These allegations establish nonfeasance at most, which does not give rise to a special relationship.  Greyhound, 213 Cal. App. 4th at 1136.  At no point do plaintiffs allege that defendants voluntarily undertook any affirmative actions to aid or protect them.  Indeed, they allege exactly the opposite: that defendants repeatedly failed to come to their aid despite notice Banks' dangerous criminal behavior.

As a matter of law, this type of inaction by law enforcement does not create a special relationship or a duty of care.  See Zelig, 27 Cal. 4th at 1130 (no duty and thus no negligence liability where officers failed to protect plaintiff from being shot by her husband in the courthouse, despite officers' alleged knowledge of the peril); Greyhound, 213 Cal. App. 4th at 1137 (CHP nonfeasance in response to 911 calls not actionable in negligence).  And plaintiffs' detrimental reliance argument also fails.  The allegations of the SAC do not demonstrate that defendants induced plaintiffs to rely on them for protection, and so plaintiffs' alleged reliance cannot support the existence of a special relationship.  See Greyhound, 213 Cal. App. 4th at 1137.

For all these reasons, Claims Five through Seven must be dismissed.  It is unnecessary to address the other arguments forwarded by defendants.[10]

### V.  Further Leave to Amend is Not Appropriate

When a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment.  See Fed. R. Civ. P. 15(a); Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  However, leave to amend "is properly denied ... if amendment would be futile."  Carrico v. City

---

[10] Defendants assert immunity under Cal. Govt. Code § 815, but questions of statutory immunity do not arise unless plaintiffs establish a duty of care that could support liability.  Greyhound, 213 Cal. App. 4th at 1136.

1 & County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011).

2   This case has been pending for a significant period, yet it has failed to move past the pleading stage.  Plaintiffs were previously provided an opportunity to amend, have done so twice, and still fail to state any claim upon which relief may be granted.  The factual allegations are clear and, as a matter of law, do not support liability under § 1983 or state law.  Accordingly, the undersigned concludes that further leave to amend would be futile and therefore should not be granted.

### VI.  Conclusion

Accordingly, the undersigned recommends that the motions to dismiss at ECF Nos. 60 and 61 be GRANTED and that this case be DISMISSED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: August 5, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE